Citation Nr: 1826270 
Decision Date: 04/30/18 Archive Date: 05/07/18

DOCKET NO. 10-43 904 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for a lumbar spine disability (a back disability) to include as secondary to service-connected pes planus with degenerative joint disease and left flexion synovial cyst of the left foot and pes planus with degenerative joint disease of the right foot (a bilateral foot disability).

2. Entitlement to a total rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

N. T. Werner, Counsel


INTRODUCTION

The Veteran served on active duty with the United States Marine Corps from July 1972 to July 1975.

This matter came before the Board of Veterans Appeals (Board) on appeal from March 2010 and September 2010 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. 

In this regard, the TDIU claim comes to the Board as part of the Veteran's claim for increased ratings for the bilateral foot disability which claim was the subject of an earlier and final March 2014 Board decision. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

In January 2011 and August 2012, the Veteran withdrew his personal hearing requests. 

In a March 2014 decision the Board, among other things, denied the Veteran's claim of service connection for a back disability and a TDIU rating. The Veteran appealed the decision to the United States Court of Appeals for Veterans Claims (Court). 

Pursuant to a January 2015 Joint Motion for Remand (JMR), the Court in a February 2015 order vacated the portion of the Board's decision which denied service connection for back disability and a TDIU rating. 

In May 2015, the Board remanded these issues so as to address the concerns raised by the JMR.






FINDINGS OF FACT

1. The probative evidence of record shows that a back disability was not present in service or until many years thereafter, it is not related to service, it is not related to an incident of service origin, and it is not related to a service-connected disability.

2. The probative evidence of record shows that the Veteran and his representative failed to cooperate with the prosecution of the claim for a TDIU.

3. The probative evidence of record shows that the Veteran's service-connected disabilities are a right and left foot disability, each rated at 30 percent disabling, and they are treated as a single disability rated as 60 percent disabling at all times during the pendency of the appeal because they are both disabilities of the lower extremities. 

4. The probative evidence of record shows that the Veteran's service-connected bilateral foot disability does not cause him to be unable to secure or follow a substantially gainful occupation at any time during the pendency did. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a back disability have not been met. 38 U.S.C.A. §§ 1101, 1112, 1110, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2017).

2. The criteria for a TDIU rating are not met at all times during the pendency of the appeal. 38 U.S.C. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.1, 4.16 (2017). 





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Service Connection Claim

The Veteran claims, in substance, that he is entitled to service connection for a back disability because it is due to the rigors that were placed on his body while in military service because he was obese at that time and/or because it is due to his service-connected bilateral foot disability. See, e.g., claim dated in August 2009; statements in support of claim dated in April 2010. 

As to the claim of service connection for a back disability, the Board initially finds that the VA examination dated in August 2010, when combined with the post-remand VA examination dated in November 2016, are adequate to adjudicate the claim and satisfies the concerns raised in the January 2015 JMR. 

The Board has reached this conclusion because the August 2010 VA examiner provided etiology opinions that addressed whether the Veteran's current back disability was directly caused by service and/or caused by his service-connected bilateral foot disorder. 

Moreover, the November 2016 VA examiner thereafter provided etiology opinions that addressed whether the Veteran's current back disability was directly caused by service and/or aggravated by his service-connected bilateral foot disorder. Tellingly, both set of opinions were provided after a review of the record on appeal and/or a comprehensive examination of the claimant, they both took into account his in-service and post-service medical history, and the opinions are supported by a detailed medical explanation which cited to evidence found in the claims file and/or controlling medical literature. See 38 U.S.C.A. § 5103A(d) (West 2014); Barr v. Nicholson, 21 Vet. App. 303 (2007); Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict compliance with the terms of a remand request, is required); Dyment v. West, 13 Vet. App. 141, 146-47 (holding that there was no Stegall violation when the examiner made the ultimate determination required by the Board's remand, because such determination more than substantially complied with the Board's remand order). 

In this regard, it must be noted that it will always be difficult to obtain medical opinions based on events that occurred decades ago. 

Furthermore, because neither the Veteran nor his representative in the JMR or in any other writing to VA has raised any other issue as to the duty to notify or duty to assist, the Board finds that it need not further discuss these duties. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). It is important for the Veteran to understand that there is simply no basis to assume that a third or fourth examination would provide a basis to grant this claim. 

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection if the disability is one that is listed in 38 C.F.R. § 3.309. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

In addition, service connection may also be granted on the basis of a post-service initial diagnosis of a disease, where the physician relates the current condition to the period of service. 38 C.F.R. § 3.303(d). Other specifically enumerated disorders, including arthritis, will be presumed to have been incurred in service if they manifested to a compensable degree within the first year following separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2017). 

In this regard, in order to establish service connection for the claimed disorders, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

Service connection may also be granted where disability is proximately due to or the result of already service-connected disability. 38 C.F.R. § 3.310. Compensation is payable when service-connected disability has aggravated a non-service-connected disorder. Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).

The requirement of a current disability is "satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim." See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In this regard, the post-service record shows the Veteran being diagnosed with lumbar spine degenerative joint disease and degenerative disc disease. See VA treatment record dated in October 2001; VA examinations dated in August 2010 and November 2016. In addition, the Board finds that the Veteran is competent to report on having a problem with his weight as well as manifestations of his disability, such as pain and lost motion, because it comes to him via his own senses. See Davidson, supra. 

Contrary to the Veteran's claims, while the June 1972 entry examination reported that the Veteran weighed 156 pounds and was 62.25 inches tall and the July 1975 separation examination reported that he weighed 140 pounds and was 64 inches tall, the service treatment records are negative for documentation of the appellant having a problem with his back caused by his weight when he entered service or at any subsequent time during service. 

In fact, the Board notes that service treatment records, including the July 1975 separation examination, are negative for a back injury, reports of a problem with the back, and negative for a diagnosis of a back disability. Moreover, when examined in July 1975 it was specifically opined that his spine normal. This medical opinion is not contradicted by any other medical evidence of record. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (VA may only consider independent medical evidence to support its findings and is not permitted to base decisions on its own unsubstantiated medical conclusions); also see 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a); Hensley, supra.

The record also does not show the Veteran being diagnosed with arthritis in his back in the first post-service year. See 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Similarly, despite the Veteran's claims to the contrary, the preponderance of the evidence of record shows that he did not have a continued problem with his back in and since service. In fact, as reported above, the July 1975 separation examination is negative for back complaints or a diagnosis a back disability. 

Likewise, and perhaps more importantly, the post-service record is negative for complaints, diagnoses, or treatment for a back disability until 2001; almost three decades after service. See, e.g., VA treatment records dated in January 2001, March 2001, October 2001, April 2002, and September 2003. 

In this regard, the Board finds it factually significant that the first post-service record that documented the Veteran's complaints of back pain in 2001 also included the appellant's report that he had had this back pain for only the last five years (i.e. 1996) and the back pain was not caused by any specific trauma. See VA treatment record dated in January 2001; also see 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(b). 

Similarly, while in an April 2002 VA treatment record the Veteran reported a twenty year history of back pain, this record also placed the onset of his back disability in 1982-seven years after his separation from service in 1975. Id.

Simply stated, at points in this record the Veteran himself provides factual evidence against the claim that his back disability has existed since service of high probative value, as it was done during an examination for treatment, and prior to any claim for benefits. 

The Veteran claims, in substance, that he had continued back problem in and since service. Moreover, in July 2009 the Veteran's son reported that his father had complained about his back for many years. However, the Board finds more probative the normal spine examination when examined for separation in July 1975, the report of only a five year history of back pain in the January 2001 VA treatment record, and the report if a twenty year history of back pain in the April 2002 VA treatment record. See Owens, supra. The best evidence in the case (while clearly not all the evidence in this case) provides evidence against the Veteran's recollection of events after service that the Board cannot, unfortunately, ignore. 

As to direct service connection, the Board finds that the most probative evidence of record are the opinions provided by the August 2010 and November 2016 VA examiners because they provide competent and credible opinions that the current back disability is not due to the Veteran's military service. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(d); also see Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992) (establishing service connection requires finding a relationship between a current disability and events in service or an injury or disease incurred therein). The Board finds these opinions the most credible evidence of record for the following reasons: they were provided after a review of the record on appeal and/or a comprehensive examination of the claimant; they took into account his in-service and post-service medical history; they included a detailed medical explanation for the negative etiology opinions which opinions were supported by citation to evidence found in the claims file and/or controlling medical literature; and no contrary medical opinion is found in the record. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(d); also see Owens, supra. The Board will not get a better medical opinion regarding this issue. 

In this regard, it is important to note that at this point both the facts of this case (the post-service medical record, service medical record, and some of the Veteran's own prior statement) and the medical opinion evidence provide highly probative evidence against this claim, either of which, standing alone, would provide a basis to deny the claim.

As to secondary service connection, the Board finds that the most probative evidence of record are the opinions provided by the August 2010 and November 2016 VA examiners because the 2010 opinion provides a competent and credible opinions that the current back disability was not caused by the Veteran's service connected bilateral foot disability and the 2017 opinion provides a competent and credible opinions that the current back disability was not aggravated by the Veteran's service connected bilateral foot disability. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.310; also see Allen, supra. The Board finds these opinions addresses the concerns raised in the January 2015 JMR and are the most credible evidence of record for the following reasons: both opinions were provided after a review of the record on appeal and/or a comprehensive examination of the claimant; both opinions took into account his in-service and post-service medical history; both opinions included a detailed medical explanation for their negative etiology opinions which opinions were supported by citation to evidence found in the claims file and/or controlling medical literature; and no contrary medical opinion is found in the record. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.310; also see Owens, supra. Given that we are addressing service from decades ago, with no record of back problems in service, the Board finds it highly unlikely that we would obtain a better examination then the ones we have obtained at this time. Further development would serve no constructive purpose. 

Furthermore, the Board finds that the Veteran is not competent to provide a direct or secondary nexus opinion because he does not have the required medical expertise to provide an answer to this complex medical question, such as what caused his back problems including the relationship between his current back problems and his service-connected bilateral foot disability. See Davidson, supra. 

Accordingly, the Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for a back disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113; 38 C.F.R. § 3.303, 3.310.

The TDIU Claim

The Veteran claims he is entitled to a TDIU because, in substance, the pain from his bilateral foot disability prevents him from working because it prevents him from walking or standing for prolonged periods of time. See, e.g., statements in support of claim dated in December 2003, July 2009, and April 2010; VA examination dated in August 2010.

Initially, the Board notes that the January 2015 JMR raised some questions regarding the adequacy of VA's notification and assistance as to his TDIU claim.

In this regard, the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000) (VCAA), describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

As to VA's duty to notify, the Board finds that the notice provided the Veteran in November 2015 provided him with adequate VCAA notice. While the Veteran was not provided 38 U.S.C.A. § 5103(a) notice prior to the adjudication of the claim, the Board finds that providing him notice in the November 2015 letter and thereafter adjudicating the claim in the November 2017 supplemental statement of the case "cures" any timing problem associated with inadequate notice or the lack of notice prior to the initial adjudication. Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (Mayfield III), citing Mayfield II, 444 F.3d at 1333-34. 

As to VA's duty to assist, VA has secured all available and identified pertinent in-service and post-service evidence including all available and identified post-service records. See 38 U.S.C.A. § 5103A(b). The Board also finds the opinions provided by the August 2010 and November 2017 VA examiners adequate to adjudicate the claim because they were provided after a review of the record on appeal and the opinions were supported by a detailed medical explanation which cited to evidence found in the claims file and/or controlling medical literature. See 38 U.S.C.A. § 5103A(d); Barr, supra.

In summary, the facts relevant to this claim have been properly developed and there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. §§ 5103(a), 5103A, 38 C.F.R. § 3.159. Therefore, the Veteran will not be prejudiced as a result of proceeding to the merits of the TDIU claim. See Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993).

As to the merits of the claim, a total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341. 

Initially, the Board notes that the record does not include a completed VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability (TDIU claim form), despite the Board in May 2015 remanding the appeal to, in part, provide the Veteran with notice of the laws and regulations governing his TDIU claim and despite VA in November 2015 providing the appellant with a blank TDIU claim form to complete. 

Therefore, the Board initially finds that the Veteran's claim for a TDIU is denied because of his and his representative's failure to cooperate with the prosecution of this claim. See M21-1, Part IV, Subpart ii, Chapter 2, Section F, Topic 2, Block b (change date July 21, 2016) (providing, in part, that VA may deny a claim for a TDIU for failure to cooperate with development when an appellant fails to complete and return a VA Form 21-8940).

As a result, the Veteran's claim for TDIU must be denied.

In the alternative, notwithstanding the above, in order to avoid further litigation and delay in the mater, even if the Board were to somehow overlook the above, as to the merits of the claim for TDIU, the Board notes that it may only be assign in the first instance provided that certain schedular disability ratings requirements. See 38 C.F.R. § 4.16(a); see also Bowling v. Principi, 15 Vet. App. 1, 10 (2001) (holding that the Board may not assign a TDIU in the first instance when the schedular requirements of 38 C.F.R. § 4.16(a) are not met). 

In this regard, the Veteran's only service-connected disabilities are his right and left foot disabilities and they are each rated as 30 percent disabling at all times during the pendency of the appeal. Moreover, the Board finds that the regulations related to combining the ratings for various service connected disabilities apply to the current appeal because he has disabilities of both lower extremities. See 38 C.F.R. § 4.16(a)(1). Therefore, the Board finds that the Veteran meets the criteria for a schedular TDIU rating at all times during the pendency of the appeal because his bilateral foot disability is treated as one disability rated as 60 percent disabling. 38 C.F.R. § 4.16(a).

Accordingly, the next question for the Board to consider is whether the Veteran's service-connected bilateral foot disability prevents him from being able to secure or follow a substantially gainful occupation at any time during the pendency of the appeal. Id.

In this regard, medical records document the Veteran's reports that he had not worked since approximately 2000 or 2004. See, e.g., VA treatment records dated in January 20004, January 2005, October 2005, July 2006, and February 2007; VA examination dated in August 2010. The VA treatment records also document the Veteran claims that his foot pain caused him to quit a job. See, e.g., VA treatment records dated in November 2003. They also document his complaints that his foot pain prevented him from standing for long periods of time. See, e.g., VA treatment records dated in November 2010, and September 2015. The VA treatment records also show that the Veteran was issued orthotics and a standard cane. See, e.g., VA treatment records dated in January 2004, February 2004, April 2005, August 2009, November 2011, and July 2016.

The record also includes statements from the Veteran in which he claimed, in substance, that his foot pain makes it too painful to walk or stand and therefore he cannot work. See, e.g., statement in support of claim dated in December 2003, July 2009, and April 2010.

However, the Board also notes that the VA treatment records also show the Veteran being treated for non service-connected foot problems (i.e., toenail problems, hammer toes, and cysts) (see, e.g., VA treatment records dated in August 2011, November 2011, April 2016, and May 2017) as well as for obesity and a back disorder and they do not distinguish between the adverse impact his various disabilities have on his ability to obtain and maintain employment. Moreover, the Board finds that it is not required to accept evidence that is simply information recorded by a medical examiner, unenhanced by medical opinion. LeShore v. Brown, 8 Vet. App. 406 (1995); Godfrey v. Brown, 8 Vet. App. 113, 121 (1995). 

As to the Veteran's writings to VA, the Board finds that he is not competent to provide an employability opinion because he does not have the required medical expertise to provide an answer to this complex medical question, such as what impact his service-connected bilateral foot disability, acting alone, has on his ability to obtain and maintain employment. See Davidson, supra. 

Moreover, the August 2010 VA examiner opined that the Veteran's bilateral foot disability would only have a "mild" impact on his ability to perform physical employment because of the pain it caused and "no" impact on his ability to perform sedentary employment, providing evidence of high probative value against this claim. 

Thereafter, the November 2017 VA examiner opined that the Veteran's bilateral foot disability would only have a "mild" impact on gainful physical occupation due to pain from prolonged standing greater than 30-60 minutes and "no" impact on gainful sedentary occupation. 

Tellingly, the Board finds that VA examiners opinions as to the occupational impairment caused by the Veteran's bilateral foot disability (i.e., a mild adverse impact on physical employment) the most probative evidence of record because they are supported by a review of the record on appeal and/or a comprehensive examination of the claimant; they took into account his in-service and post-service medical history; they include a detailed medical explanation for the opinions provided which opinions are supported by citation to evidence found in the claims file and/or controlling medical literature; and no contrary medical opinion is found in the record. See Owens, supra. 

Furthermore, the Board finds that while VA treatment records document the Veteran's complaints and treatment for bilateral foot pain (in this regard, the fact that he has foot pain is not in dispute: if the did not have foot problems there would be no basis for the rating he now has for this problem - a 60% disability is by definition a significant disability that will cause the Veteran problems), nothing in these records show the adverse impact these disabilities have on employment to be worse than what was reported at the above VA examinations. See Colvin, supra. Again the question is no weather the Veteran has foot problems, but if he can not work due to these problems. 

Therefore, the Board finds the most probative medical evidence of record shows that the Veteran's service-connected disabilities do not prevent him from being able to secure or follow a substantially gainful occupation at any time during the pendency of the appeal. See Owens, supra. 

Accordingly, despite the Veteran meeting the schedular part of the criteria, the Board finds that the criteria for granting a TDIU under 38 C.F.R. § 4.16(a) are not met. 

Lastly, the Board notes that an award of a TDIU can also be granted on an extraschedular basis. In this regard, it is the policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b).

The process for establishing entitlement to an extraschedular TDIU rating is described in 38 C.F.R. § 4.16(b). That process requires first an adjudicative determination that the Veteran is rendered unemployable by virtue of service-connected disabilities, and if that determination is affirmative, followed by referral to the Director, Compensation System. In this regard, the Board has no authority to award TDIU under § 4.16(b) in the first instance. See Kuppamala v. McDonald, 27 Vet. App. 447 (2015) (citing Floyd v. Brown, 9 Vet. App. 88, 94-95 (1996)). Rather, the Board's focus in this part of the current appeal is whether the Veteran meets the criteria for a referral of his claim to the Director, Compensation System, for extraschedular consideration. See 38 C.F.R. § 3.321(b)(1); Thun v. Peake, 22 Vet. App. 111 (2008).

At the outset, it is noteworthy that disability ratings represent, as far as can practicably be determined, the average impairment in earning capacity resulting from the service-connected disabilities in civil occupations. See 38 C.F.R. § 4.1. In other words, occupational impairment with respect to a specific type of employment is not dispositive; and if a Veteran is precluded by service connected disability or disabilities from participating in a specific type of employment in which the Veteran has primary experience, but remains capable of maintaining other regular substantially gainful employment consistent with education and occupational experience, such Veteran is not deemed unemployable. 

The central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2017); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In this regard, and as noted above, medical records document the Veteran's reports that he had not worked since approximately 2000 or 2004. See, e.g., VA treatment records dated in January 20004, January 2005, October 2005, July 2006, and February 2007; VA examination dated in August 2010. The VA treatment records also document the Veteran's claims that his foot pain caused him to quit a job. See, e.g., VA treatment records dated in November 2003. They also document his complaints that his foot pain prevented him from standing for long periods of time. See, e.g., VA treatment records dated in November 2010, and September 2015. The treatment records also show that the Veteran was issued orthotics and a standard cane. See, e.g., VA treatment records dated in January 2004, February 2004, April 2005, August 2009, November 2011, and July 2016. 

Similarly, and as also noted above, the record includes statements from the Veteran in which he reports, in substance, that he cannot work because his feet make it too painful to walk or stand. See, e.g., statement in support of claim dated in December 2003, July 2009, and April 2010; also see Davidson, supra.

On the other hand, and as also noted above, the August 2010 and the November 2017 VA examiner both opined that the Veteran's bilateral foot disability would only have a "mild" impact on his ability to perform physical employment and "no" impact on his ability to perform sedentary employment. 

The Board finds that while VA treatment records document the Veteran's complaints and treatment for bilateral foot pain, nothing in these records show the adverse impact these disabilities have on employment to be worse than what was reported at the above VA examinations. See Colvin, supra. Moreover, the Board finds that VA examiners opinions as to the occupational impairment caused by the Veteran's bilateral foot disability the most probative evidence of record because they are supported by a review of the record on appeal and/or a comprehensive examination of the claimant; they took into account his in-service and post-service medical history; they include a detailed medical explanation for the opinions provided which opinions are supported by citation to evidence found in the claims file and/or controlling medical literature; and no contrary medical opinion is found in the record. See Owens, supra. Therefore, the Board finds the most probative medical evidence of record shows that the criteria for referral of a claim for an extraschedular rating are not met because it shows his service connected disabilities only have a mild impact on his ability to perform physical employment. See Owens, supra.

The Board also finds it significant that the symptomatology identified by the VA examiners and documented in the VA treatment records (i.e., pain) is a symptom that is already contemplated as well as compensated for by the rating criteria. See 38 C.F.R. §§ 4.71a, Diagnostic Code 5284 (other foot injuries) (2017); DeLuca v. Brown, 8 Vet. App. 202 (1995). In this regard, while the terms "mild," "moderate," "moderately severe" and "severe" are not defined in the Rating Schedule, the Board in rating disabilities applying Diagnostic Codes that apply such criteria must evaluate all of the evidence to the end that the decision is "equitable and just" and therefore would consider his pain. See 38 C.F.R. § 4.6 (2017). Therefore, the Board finds that the most probative medical evidence of record also shows that the bilateral foot disability symptoms reported by these VA examiners and seen in the treatment records is not the type of symptomatology that meets the criteria for referral of a claim for an extraschedular rating. See Owens, supra; also see Bagwell v. Brown, 9 Vet. App. 337 (1996). The Board can not ignore this highly probative evidence. 

As to the history recorded in the Veteran's treatment records and the lay statements from the Veteran (i.e., not being able to work because his foot pain prevents him for walking or standing), the Board is not required to accept evidence that is simply information recorded by a medical examiner, unenhanced by medical opinion. LeShore, supra. Additionally, the Board does not find the Veteran's opinion that his service-connected bilateral foot disability prevents him from working accurate because he does not have the required medical experience to provide an answer to a complex medical question. See Davidson, supra. Furthermore, the Board finds more probative the expert medical opinions provided the August 2010 and November 2017 VA examiners regarding the impact his bilateral foot disability has on employment than the Veteran's lay claims to the contrary because the VA examiners have medical training. See Black v. Brown, 10 Vet. App. 297, 284 (1997) (in evaluating the probative value of medical statements, the Board looks at factors such as the individual knowledge and skill in analyzing the medical data). Therefore, the Board also finds the lay statements from the Veteran whether memorialized in his treatment records and/or in writings to VA are not sufficient to meet the criteria for referral of a claim for an extraschedular rating. See Owens, supra.

Lastly, given the Veteran's failure to provide VA with a TDIU claim form, the Board has no further details regarding the circumstances surrounding his decision to no longer work, his education, and his work history and therefore must work with the evidence found in the claims file. See Wood v. Derwinski, 1 Vet. App. 190, 192 (1991) (holding that "the duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the purgative evidence."). Accordingly, the Board finds that the preponderance of the medical and lay evidence is against finding that a referral of his claim to the Director, Compensation Service for consideration of an extraschedular rating. See Owens, super. 

Given the above, the Board also finds that the claim for a TDIU rating is denied. 38 C.F.R. § 4.16. 


Conclusion

In reaching all the above conclusions, the Board also considered the doctrine of reasonable doubt. 38 U.S.C.A. § 5107(b). However, as the preponderance of the evidence is against the claims, the doctrine is not for application. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert, supra. In this regard, it is important for the Veteran to understand that the doctrine of reasonable doubt has been actively used in this case, providing the basis for the Board's grant of increased rating for his bilateral foot disability in a prior decision in the Veteran's case, notwithstanding some of the object evidence which would not support such a finding.

ORDER

Service connection for a back disability is denied.

A TDIU rating is denied.


JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs